In the Matter of the WELFARE OF K.A.P., Child.

No. C2–95–2224.

Court of Appeals of Minnesota.

June 18, 1996.

Review Denied Aug. 20, 1996.

John M. Stuart, Minnesota State Public Defender, Charlann Winking, Asst. State Public Defender, Minneapolis, for Appellant K.A.P.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Roger S. Van Heel, Stearns County Atty., Will R. Brost, Asst. County Atty., St. Cloud, for Respondent State of Minnesota.

Considered and decided by LANSING, P.J., and HARTEN and SCHULTZ, JJ.

## OPINION

HAROLD W. SCHULTZ, Judge.*

This appeal is from an order certifying appellant K.A.P. to stand trial as an adult on charges of second-degree murder. *See* Minn.Stat. § 609.19(1) (1994) (intentional murder), Minn.Stat. § 609.19(2) (1994) (felony murder); Minn.Stat. § 260.125, subd. 2a (1994) (presumption of certification for 16 or 17–year–old who commits an offense with a guidelines presumptive executed sentence).

## FACTS

The state filed a delinquency petition alleging that on May 25, 1995, K.A.P., then age 17, caused the death of Ronderick Dewayne

Skipper, by stabbing him. Witnesses told police that Skipper was arguing with K.A.P., who entered the apartment building where he lived, followed a short time later by Skipper. K.A.P. told police that he had gone into his apartment, where he retrieved a kitchen knife for his own protection. He heard Skipper in the hallway outside, opened the door, and stabbed him in the chest, although Skipper had not made a move towards him.

The state immediately filed a motion to certify K.A.P. to stand trial as an adult. After the trial court found probable cause to believe K.A.P. committed the offense, it ordered a psychological evaluation.

The psychological evaluation found no mental illness, nor any "underlying emotional disturbance." Patrick Carroll, the psychologist who prepared the evaluation, testified that K.A.P. has a lot of "positives" and strengths, but exhibits behavioral problems associated with a lack of impulse control and control over anger. He testified that K.A.P. had no psychological, or chemical dependency, problems. He recommended retaining K.A.P. in the juvenile system at a residential treatment program. He testified that if the proceeding was designated as an extended jurisdiction juvenile (EJJ) proceeding, with juvenile court jurisdiction continuing until age 21, the length of time was sufficient to serve public safety. He testified that it was highly unlikely that K.A.P. would commit a similar offense and that three years of treatment and probation would reveal whether K.A.P. had solved his behavioral problems.

The probation officer who completed the certification study, Don Bellmont, reached a different conclusion. He testified that although K.A.P. had the ability to turn his life around, he needed to be under some type of supervision longer than three and one-half years. He testified that K.A.P. had no prior juvenile adjudications. K.A.P., however, had two fifth-degree assault petitions pending at the time of the alleged homicide. Each of these was for striking a woman, including one victim who was allegedly pregnant.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

K.A.P. also was a possible suspect in three other incidents from December 1994 to April 1995, involving fights or verbal confrontations.

K.A.P. presented testimony establishing that he had been accepted into two residential treatment programs that handled serious juvenile offenders and that he was considered an appropriate candidate for a third.

The trial court granted the certification motion, concluding that the juvenile system provided inadequate punishment for K.A.P. The court compared the three and one-half years remaining in the juvenile system with the 306–month presumptive adult sentence. The court found that the two residential treatment programs to which K.A.P. had been admitted were appropriate but did not allow for an adequate period of supervision.

## ISSUE

Did the trial court abuse its discretion in ordering certification to adult court?

## ANALYSIS

■ K.A.P. challenges the trial court's determination that he did not rebut by clear and convincing evidence the presumption of certification. A juvenile certification order "will not be reversed unless its findings are clearly erroneous so as to constitute an abuse of discretion." *In re Welfare of T.L.J.*, 495 N.W.2d 237, 240 (Minn.App.1993).

K.A.P. concedes that the statutory presumption of certification applies because he is charged with committing second-degree murder and was 17 years old at the time of the offense. *See* Minn.Stat. § 260.125, subd. 2a (1994). The statute provides that in such a case:

> If the court determines that probable cause exists to believe the child committed the alleged offense, the burden is on the child to rebut this presumption by demonstrating by clear and convincing evidence that retaining the proceeding in the juvenile court serves public safety.

*Id.*

As K.A.P. points out, the choice in a presumptive certification case is between adult certification and designation as an EJJ proceeding. *See* Minn.Stat. § 260.125, subd. 5 (if certification is not ordered in a presumptive certification case, the court "shall designate" the proceeding an EJJ prosecution). Thus, the alternative to adult certification is not simply juvenile court jurisdiction to age 19, but rather EJJ jurisdiction to age 21, with an adult criminal sentence to be executed if K.A.P. should violate the provisions of the juvenile disposition order or commit a new offense. *See* Minn.Stat. § 260.126, subd. 4(2) (1994).

The certification statute lists six factors to consider in determining whether the public safety is served by certifying the juvenile as an adult:

> (1) the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the sentencing guidelines, the use of a firearm, and the impact on any victim;

> (2) the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the sentencing guidelines;

> (3) the child's prior record of delinquency;

> (4) the child's programming history, including the child's past willingness to participate meaningfully in available programming;

> (5) the adequacy of the punishment or programming available in the juvenile justice system; and

> (6) the dispositional options available for the child.

Minn.Stat. § 260.125, subd. 2b (1994). The statute also instructs the court how to weigh these factors:

> In considering these factors, the court shall give greater weight to the seriousness of the alleged offense and the child's prior record of delinquency than to the other factors listed in this subdivision.

*Id.*

K.A.P. acknowledges that the first factor, the seriousness of the offense, favors certifi-

cation. He argues, however, that by presenting favorable evidence on the other, non-offense related, factors in Minn.Stat. § 260.125, subd. 2b, he has rebutted the presumption of certification. On the facts of this case, it was not an abuse of discretion to find otherwise.

■ Under earlier versions of the certification statute, it has been held that the state must present evidence of dangerousness other than the offense charged in the petition itself. *E.g., In re Welfare of K.P.H.*, 289 N.W.2d 722, 725 (Minn.1980). This court has held that the requirement of "non-offense related evidence of dangerousness" applies to EJJ designations. *In re Welfare of S.W.N.*, 541 N.W.2d 14, 17 (Minn.App.1995), *review denied* (Minn. Feb. 9, 1996). But in EJJ designations, the state still bears the burden of proof. Minn.Stat. § 260.126, subd. 2. In a presumptive certification case, the state can rest its argument on proof of the juvenile's age at the time of the offense and on the seriousness of the offense.

■ The current statute requires the court in a presumptive certification case to consider factors other than the seriousness of the offense. Minn.Stat. § 260.125, subd. 2b. Therefore, it is still true, as before, that the charged offense alone does not determine the risk to public safety. But now the other evidence must be considered in light of the shifting of the burden of proof to the juvenile.

The seriousness of the charged offense is not the only statutory factor favoring adult certification in this case. The statute provides that the court should consider "the adequacy of the punishment or programming available in the juvenile justice system." Minn.Stat. § 260.125, subd. 2b(5). The trial court compared the presumptive adult criminal sentence (306 months) to the time remaining in the juvenile system under EJJ (three and one-half years). The trial court determined that this time remaining under EJJ did not provide an adequate period of supervision.

■ K.A.P.'s rebuttal of the state's case relied heavily on the psychological evaluation. The psychologist, however, admitted that he had some concern about the short time available in the juvenile system. He concluded that if K.A.P. had an uncontrollable behavioral problem, it would show up in the time remaining under EJJ jurisdiction and provide grounds for imposing the adult sentence. He also noted that K.A.P. did not have a long track record of aggression. His evaluation, however, did not take into consideration several incidents shown in K.A.P.'s school records.

The trial court acknowledged that in ordering adult certification it was relying in part on unadjudicated conduct, but emphasized it was doing so because that conduct showed a pattern. The unadjudicated assault petitions involved alleged conduct occurring within seven months of the charged offense. We conclude that to require the trial court to ignore the two pending assault charges would unduly limit the court's ability to accurately assess the risk to public safety. At the least, the pending charges are relevant to the conclusions in the psychological evaluation.

The trial court's order reflects a careful balancing of the seriousness of the second-degree murder charges and the existence of mitigating factors. The court acknowledged that there was evidence that the victim was the aggressor, and that there was little, if any, indication of planning by K.A.P. The trial court, however, noted the concern with the lack of time for punishment, or even adequate supervision, in the juvenile court system. K.A.P. presented a psychological evaluation concluding that he was motivated towards, and capable of, changing his behavior. But the trial court had to determine what weight to place on that evaluation. We conclude that the trial court did not abuse its discretion in concluding that K.A.P. failed to present clear and convincing evidence to rebut the presumption of certification.

### DECISION

The trial court did not abuse its discretion in ordering appellant certified to stand trial as an adult.

**Affirmed.**