In the Matter of the WELFARE OF J.C.P., JR.

No. A05–1294.

Court of Appeals of Minnesota.

July 3, 2006.

Samuel A. McCloud, Carson J. Heefner, McCloud & Boedigheimer, P.A., Shakopee, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Michelle A. Dietrich, Redwood County Attorney, Redwood Falls, MN, for respondent.

Considered and decided by SHUMAKER, Presiding Judge; WRIGHT, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

In this appeal from an adult-certification order, appellant J.C.P. argues that because adult certification exposes a juvenile to a potentially greater sentence if convicted, he has a Sixth Amendment right to a jury

determination of any fact supporting that certification under *Blakely v. Washington*. Because the constitutional protections available in the juvenile system arise from the Due Process Clause of the Fourteenth Amendment and not from the Sixth Amendment, and because adult certification is a pretrial jurisdictional determination, a juvenile does not have a Sixth Amendment right to a jury determination of facts supporting adult certification. We affirm.

## FACTS

Appellant J.C.P., Jr., is a juvenile who was indicted on three counts of first-degree murder for an incident in which he allegedly participated in the killing of his uncle. According to the record available to us, the state alleges the following facts: J.C.P. attended and consumed alcohol at a party in Morton, Minnesota, in the late night and early morning hours of September 23 and 24, 2004. J.C.P. argued with his uncle at the party and became enraged. With the assistance of his friend, J.C.P. beat his uncle so violently that his uncle's blood spattered the walls nearly to the ceiling. Again with the assistance of others, J.C.P. continued to beat and kick his uncle even after his uncle became unconscious. J.C.P. left his unconscious uncle at the party, but he returned with friends with the intent to kill him. J.C.P. took his uncle's keys, wrapped him in a blanket, loaded him into his uncle's vehicle, and drove him to the Lower Sioux reservation where J.C.P. stabbed him 15 times. J.C.P. and his friends dumped the beaten, stabbed, dead uncle's body into the Minnesota River. They then set the uncle's vehicle ablaze. J.C.P. left the state, and police eventually arrested him in October 2004. Authorities initially charged J.C.P. by juvenile delinquency petition. The state later filed a motion for certification to prosecute J.C.P. as an adult. J.C.P. challenged the state's motion and argued

that under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), he is entitled to a jury determination of the facts supporting adult certification.

After a certification study and hearing, the juvenile court granted the state's motion and ordered certification. The juvenile court rejected J.C.P.'s *Blakely* argument and denied his request for a jury determination of the facts supporting certification. The juvenile court stayed the prosecution proceedings pending J.C.P.'s appeal of the adult-certification order. This appeal follows.

## ISSUE

Does a juvenile have a Sixth Amendment right to a jury determination of the facts supporting adult certification?

## ANALYSIS

J.C.P. argues that he has a Sixth Amendment right under *Blakely* to have a jury determine the facts supporting adult certification and that the statute permitting the district court to certify a juvenile as an adult based on clear and convincing evidence is therefore unconstitutional. The application of *Blakely* presents a constitutional issue, which we review de novo. *State v. Hagen*, 690 N.W.2d 155, 157 (Minn.App.2004). We also review the constitutionality of a statute de novo. *State v. Benniefield*, 678 N.W.2d 42, 45 (Minn. 2004). An appellant claiming that a statute is unconstitutional must show that the statute is unconstitutional beyond a reasonable doubt. *Id.*

The certification scheme that J.C.P. challenges is established by statute. When a juvenile who is at least 14 years old is alleged to have committed an offense that would be a felony if committed by an adult, the juvenile court may certify "the proceeding for action under the laws and

court procedures controlling adult criminal violations." Minn.Stat. § 260B.125, subd. 1 (2004). There is a rebuttable presumption that a proceeding will be certified if the juvenile is 16 or 17 years old and the alleged crime has a presumptive sentence of imprisonment. Minn.Stat. § 260B.125, subd. 3 (2004). When presumptive certification does not apply, the juvenile court may order certification if the "the prosecuting authority has demonstrated by clear and convincing evidence that retaining the proceeding in the juvenile court does not serve public safety." Minn.Stat. § 260B.125, subd. 2(6)(ii) (2004). J.C.P. does not challenge the juvenile court's determination that certification is appropriate or argue that the other provisions of the adult-certification statute are unconstitutional. The only issue J.C.P. raises on appeal is whether the nonpresumptive adult-certification statute violates his Sixth Amendment rights as described in *Blakely*.

■ A criminal defendant has a Sixth Amendment right to have a jury find any fact beyond a reasonable doubt, except that of a prior conviction, that increases a sentence beyond the statutory maximum. *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). In *Blakely v. Washington,* the United States Supreme Court applied *Apprendi* to Washington state's sentencing scheme and held that the statutory maximum sentence is the presumptive sentence established by the state sentencing guidelines, rather than the absolute maximum sentence permitted by statute. 542 U.S. 296, 303–04, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004). Therefore, the greatest sentence a judge can order is "the maximum sentence [that may be imposed] solely on the basis of the facts reflected in

the jury verdict or admitted by the defendant." *Id.; see also State v. Shattuck,* 704 N.W.2d 131, 133 (Minn.2005) (applying *Blakely* to the Minnesota Sentencing Guidelines). Whether *Blakely* applies to the adult-certification proceeding challenged here depends on the nature of the constitutional rights afforded to juveniles in juvenile-court proceedings.

The juvenile-court system is a product of legislative enactment. *See* Minn.Stat. § 260B.101, subd. 1 (2004) (providing that "the juvenile court has original and exclusive jurisdiction in proceedings concerning any child who is alleged to be delinquent"); *State v. Dehler,* 257 Minn. 549, 554–55, 102 N.W.2d 696, 701 (1960) (noting that the Juvenile Court Act requires "that a juvenile be brought before the juvenile court and that certain proceedings take place in that court before the district court can acquire jurisdiction"). The legislature created the juvenile-court system "to provide a distinctive procedure and setting to deal with the problems of youth." [1] *Welfare of Raino v. State,* 255 N.W.2d 398, 399 (Minn. 1977). Because the juvenile-court system is established to balance the needs of the juvenile offender and of society rather than to adjudicate criminal conduct, proceedings in juvenile court have historically been designated civil rather than criminal. *Kent v. United States,* 383 U.S. 541, 554, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84 (1966). Although Justice Blackmun complained that "[l]ittle … is to be gained by any attempt simplistically to call the juvenile court proceeding either 'civil' or 'criminal,'" *McKeiver v. Pennsylvania,* 403 U.S. 528, 541, 91 S.Ct. 1976, 1984, 29 L.Ed.2d 647 (1971) (plurality opinion), the rights afforded to a juvenile facing an adjudication of delinquency are rooted in the Due

---

**1.** The *Raino* court went on to add, "in recent years the courts have made applicable in juvenile proceedings constitutional guarantees as-

sociated with the traditional prosecutions." *Id.*

Process Clause only and not in the Sixth Amendment. *See In re Gault,* 387 U.S. 1, 30–31, 87 S.Ct. 1428, 1445, 18 L.Ed.2d 527 (1967); *In re Winship,* 397 U.S. 358, 368, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368 (1970).

Juvenile-court proceedings must "satisfy the basic requirements of due process and fairness." *Kent,* 383 U.S at 553, 86 S.Ct. at 1053. The applicable due-process standard appellate courts use when reviewing juvenile-court procedures is "fundamental fairness." *McKeiver,* 403 U.S. at 543, 91 S.Ct. at 1985. Certain constitutional rights otherwise unavailable to those not facing criminal charges have been granted through the Due Process Clause to juveniles facing delinquency adjudications. For example, a juvenile whose liberty is at stake is guaranteed the right to counsel and to confrontation and cross-examination. *Gault,* 387 U.S. at 39, 87 S.Ct. at 1449. Juveniles have the right to receive written notice of the specific charges and factual allegations and may assert the right against self-incrimination. *Id.* at 33, 55, 87 S.Ct. at 1446, 1458. A juvenile also has a due-process right to be adjudicated delinquent only upon proof beyond a reasonable doubt. *Winship,* 397 U.S. at 368, 90 S.Ct. at 1075.

But fundamental fairness under the Due Process Clause does not guarantee juveniles every right criminal defendants enjoy, such as the right to a jury trial. *McKeiver,* 403 U.S. at 545, 91 S.Ct. at 1986; *In re Welfare of C.D.N.,* 559 N.W.2d 431, 434 (Minn.App.1997), *review denied* (Minn. May 20, 1997). Fundamental fairness under the Due Process Clause does require that a juvenile court grant a hearing before waiving its jurisdiction and certifying a juvenile for prosecution as an adult. *Kent,* 383 U.S. at 552–54, 86 S.Ct. at 1052–54; *State v. Behl,* 564 N.W.2d 560, 567 (Minn.1997). Fundamental fairness also entitles a juvenile to the effective assistance of counsel at the certification hearing and to an explanation by the juvenile court of the basis for adult certification. *Kent,* 383 U.S. at 561, 86 S.Ct. at 1057. Fundamental fairness, however, does not require that a jury determine the facts supporting certification. *See id.* at 555–57, 86 S.Ct. at 1054–55.

J.C.P. argues that in addition to the rights guaranteed under the Due Process Clause, *Blakely* entitles a juvenile to a jury determination of the facts supporting certification because certification exposes a juvenile to a sentence potentially more severe than the consequences he might face if adjudicated delinquent in juvenile court. But *Blakely*'s requirement that a jury determine any fact that increases a sentence beyond the statutory maximum is rooted in a criminal defendant's Sixth Amendment right to have a jury determine guilt beyond a reasonable doubt. *Blakely,* 542 U.S. at 305, 124 S.Ct. at 2538; *see also State v. Hinton,* 702 N.W.2d 278, 282 (Minn.App.2005) ("The United States Supreme Court recently renewed its commitment to the Sixth Amendment right of a defendant to have the prosecutor prove to the jury all facts legally essential to the punishment.") (quotation omitted), *review denied* (Minn. Oct. 26, 2005). Despite that rights in juvenile proceedings have largely been borrowed from the Sixth Amendment's protections afforded to defendants in "all criminal prosecutions," rights guaranteed by the Sixth Amendment are not automatically transferable to proceedings in juvenile court. Because the constitutional guarantees afforded juveniles at certification and adjudication proceedings are based only on the Due Process Clause and its requirement for fundamental fairness, *Blakely* does not apply here.

Also, *Blakely* focuses on a materially different stage of prosecution, well after the district court's jurisdiction over the matter has been exercised, limiting the

district court's ability to impose sentences that exceed the presumptive sentence or statutory maximum absent a jury finding regarding the sentence. *Blakely*, 542 U.S. at 303–04, 124 S.Ct. at 2537. By contrast, an order of certification is a pretrial determination that transfers jurisdiction from the juvenile court to the district court. *See* Minn.Stat. § 260B.125, subd. 1; *In re Welfare of L.J.S.*, 539 N.W.2d 408, 413 (Minn.App.1995) (noting that certification is a pretrial procedure that determines which court will try the juvenile) *review denied* (Minn. Jan. 25, 1996). Once the juvenile court orders certification, the juvenile now subject to the jurisdiction of the district court has not yet been found guilty and no sentence is pending. A juvenile prosecuted for a crime as an adult in district court is then entitled to all the safeguards and guarantees afforded criminal defendants by the Constitution. *See Behl*, 564 N.W.2d at 566 (citing *Gault*, 387 U.S. at 29, 87 S.Ct. at 1444–45). The pretrial, jurisdictional nature of certification therefore also renders *Blakely* inapposite.

Other courts have likewise concluded that adult certification proceedings are jurisdictional in nature, not sentence-related proceedings to which *Blakely* would apply. *See State v. Kalmakoff*, 122 P.3d 224, 227 (Alaska Ct.App.2005) (surveying caselaw from other jurisdictions and holding that *Blakely* does not apply to juvenile-jurisdiction hearings); *State v. Rodriguez*, 205 Ariz. 392, 71 P.3d 919, 927–28 (2003) (holding that a juvenile-transfer statute "is not a sentence enhancement scheme and, therefore, does not implicate *Apprendi* ... [because it] does not subject [a] juvenile to enhanced punishment; it subjects the juvenile to the adult criminal justice system"); *State v. Jones*, 273 Kan. 756, 47 P.3d 783, 797–98 (2002) (holding that *Apprendi* does not apply to juvenile transfer hearings because they only determine "which system will be appropriate for a juvenile offender"), *cert. denied* 537 U.S. 980, 123 S.Ct. 444, 154 L.Ed.2d 341 (2002); *see also United States ·v. Juvenile*, 228 F.3d 987, 990 (9th Cir.2000) (holding that juvenile transfer "merely establishes a basis for district court jurisdiction"). Only Massachusetts has held that juveniles have a right to a jury determination of the facts supporting the imposition of an adult sentence. *Commonwealth v. Quincy Q.*, 434 Mass. 859, 753 N.E.2d 781, 789 (2001). Under Massachusetts law, a court may impose an adult sentence if a juvenile is found to be a "youthful offender." Id. at 788. But the "youthful offender" designation does not determine jurisdiction; it is a procedure that "authorizes judges to increase the punishment for juveniles convicted of certain offenses beyond the statutory maximum otherwise permitted for juveniles." Id. at 789. Because Minnesota's adult-certification procedure determines jurisdiction and is not a sentence-enhancement scheme, we conclude that *Quincy Q.* is inapposite.

The state's juvenile system is designed primarily to protect accused juveniles from criminal prosecution and to rehabilitate them. The state may not remove a juvenile from that protection except by due process. Inasmuch as the adult certification procedure is the method to expel a juvenile from the juvenile system's protection and is not in itself a criminal prosecution, the Sixth Amendment has no direct bearing on it. We conclude that a juvenile facing adult certification does not have a Sixth Amendment right to a jury determination of the facts supporting certification. *Blakely* therefore does not render the adult-certification statute unconstitutional.

## DECISION

Because the source of the protections afforded juveniles in juvenile delinquency proceedings is the Due Process Clause and

not the Sixth Amendment, and because adult certification is a pretrial jurisdictional determination that does not result in an adjudication or a sentence, a juvenile does not have a Sixth Amendment right under *Blakely* to a jury determination of the facts supporting certification.

**Affirmed.**