### In the Matter of the WELFARE of D. W.

#### No. A06–2069.

Court of Appeals of Minnesota.

May 15, 2007.

Leonardo Castro, Hennepin County Public Defender, Barbara S. Isaacman, Assistant Public Defender, Minneapolis, MN, for appellant D.T.W.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Donna J. Wolfson, Michael K. Walz, Assistant County Attorneys, Minneapolis, MN, for respondent.

Considered and decided by ROSS, Presiding Judge; KALITOWSKI, Judge; and HALBROOKS, Judge.

## OPINION

KALITOWSKI, Judge.

The state charged appellant D.W. with aiding and abetting a second-degree assault involving a dangerous weapon other than a firearm. Because D.W. was 17 years old at the time of the crime and the state believes this is a presumptive-certification offense, the state moved to certify the case for adult prosecution. The district court agreed that this is a presumptive-certification case but denied the motion to certify and instead designated the case as an extended-jurisdiction-juvenile (EJJ) case. Appellant challenges the EJJ designation order dated August 23, 2006, arguing that the district court erred in determining (1) that the presumptive-certification statute is constitutional; (2) that this case warranted a presumptive, rather than nonpresumptive, certification petition; and (3) that there was probable cause that appellant aided and abetted in a second-degree assault involving a dangerous weapon.

## FACTS

On May 9, 2006, appellant D.W. and two other juveniles (B.J. and A.R.) allegedly assaulted the victim, M.A.M., a juvenile male. The victim identified all three individuals who assaulted him. The victim reported that he had been walking home when a vehicle that was occupied by the three identified juveniles turned around and followed him. The victim stated that

B.J. stepped out of the car holding a baseball bat and that the three juveniles chased the victim over a fence and into a backyard where they hit and kicked him repeatedly. The victim stated that B.J. hit him with the baseball bat up to ten times, striking him on his right arm and right upper and lower leg. Appellant and the other juvenile attackers returned to the vehicle and fled following the assault.

During a show-up identification, the victim M.A.M., positively identified B.J. as the attacker who struck him with the bat, and A.R. and appellant as the ones who hit and kicked him during the assault. In his statement to police, B.J. admitted that he and appellant decided to jump the victim because of a physical confrontation that occurred about a month prior at school. B.J. claimed that he found the bat leaning against a house immediately prior to the assault but admitted taking the bat back with him to the car after the assault.

After he had been issued a *Miranda* advisory, appellant provided a statement in which he admitted to driving with B.J. and seeing the victim walking alone. Appellant stated that he was upset that the victim jumped into a fight about a month ago involving himself, B.J., and nine others, because the victim did not have to get involved. Because of this, appellant stated that he and B.J. jumped out of the car, chased the victim, and assaulted the victim repeatedly. Appellant claimed he did not see B.J. with a baseball bat but admitted witnessing B.J. kick and punch the victim. Two witnesses reported that they heard what sounded like an aluminum bat as the victim was being struck by one of the suspects. One witness saw the victim being hit with a bat.

Appellant was charged on May 12, 2006, with aiding and abetting a second-degree assault involving a dangerous weapon other than a firearm. On the same day, respondent filed a presumptive-certification motion, because appellant was 17 years old, and the crime with which he was charged carried a presumptive prison sentence if committed by an adult. At the hearing on May 12, appellant waived probable cause for the sole purpose of beginning the certification study and the psychological evaluation. Based on the evidence in the police reports, appellant moved to dismiss the petition for presumptive certification for lack of probable cause, and moved for an order to declare the presumptive-certification statute unconstitutional under *Blakely*, or in the alternative, to change the presumptive-certification motion to a nonpresumptive-certification motion. Following appellant's motion to dismiss the complaint for lack of probable cause, the court ordered a *Florence* hearing to examine the police reports on which the petition was based. At the *Florence* hearing, the court denied appellant's request to dismiss and found probable cause, stating that it was difficult for the court to believe that appellant would not know that the victim was being hit by a bat, given that the neighbors could hear the bat being used. The district court also found that the victim's claim that he saw B.J. step out of the car with a bat was enough to satisfy probable cause.

At a hearing on June 28, 2006, the court received written and oral arguments regarding appellant's motion to dismiss the presumptive-certification motion or convert it to a nonpresumptive-certification motion. The court denied appellant's motion to dismiss. After weighing the statutory factors, the district court denied the respondent's certification motion. The district court reasoned that although the offense was serious and appellant was culpable for hitting and kicking the victim, appellant was not the person who allegedly used the weapon. The court also found that the police officer on the scene stated

that the victim's injuries did not appear to be life-threatening and that the victim refused medical attention at the scene. Finally, the court found that the remaining statutory factors, including the lack of a prior delinquency record and programming history weighed against certification of D.W.

## ISSUES

1. Does the United States Supreme Court decision in *Blakely* make the presumptive-certification statute, Minn.Stat. § 260B.125, subd. 3 (2004), unconstitutional?

2. Did the district court err by ruling that this was a presumptive-certification case?

3. Did the district court err in finding probable cause that appellant aided and abetted a second-degree assault?

## ANALYSIS

### I.

■ Appellant challenges the certification scheme established by Minn.Stat. § 260B.125 (2004), asserting that "the entire statutory scheme is unconstitutional under *Blakely* because presumptive certification motions allow first the prosecutor and then the judge, rather than a jury, to determine what sentencing options will be available to the juvenile, should he later be found guilty." Appellant argues that because certification orders are dispositional rather that procedural, they are unconstitutional under *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004).

■ This court presumes that Minnesota statutes are constitutional. *State v. Barker*, 705 N.W.2d 768, 771 (Minn.2005). A party challenging the constitutionality of a statute must demonstrate beyond a reasonable doubt that the statute violates a constitutional provision. *Id.* The court

must invoke every presumption in favor of constitutionality and exercise its power to declare a statute unconstitutional with extreme caution and only when absolutely necessary. *Walker v. Zuehlke*, 642 N.W.2d 745, 750 (Minn.2002); *Reed v. Bjornson*, 191 Minn. 254, 257, 253 N.W. 102, 104 (1934). Whether a statute is constitutional is reviewed de novo. *State v. Rewitzer*, 617 N.W.2d 407, 412 (Minn. 2000).

In its order of July 6, 2006, the district court applied *In re Welfare of J.C.P., Jr.*, 716 N.W.2d 664 (Minn.App.2006), in determining that "[t]he process by which the [respondent] has brought its certification of [appellant] provides sufficient fundamental fairness under the due process clause." Appellant argues that the district court erred in relying on *J.C.P.* because unlike *J.C.P.* the issue here involves a challenge to the presumptive-certification statute. We disagree.

In *J.C.P.*, this court held that *Blakely* does not apply to adult-certification proceedings, because (1) Sixth Amendment rights are not automatically transferable to juvenile proceedings; and (2) certification proceedings are pretrial and jurisdictional in nature:

> Because the constitutional guarantees afforded juveniles at certification and adjudication proceedings are based only on the Due Process Clause and its requirement for fundamental fairness, *Blakely* does not apply here.
>
> . . . .
>
> [A]n order of certification is a pretrial determination that transfers jurisdiction from the juvenile court to the district court. . . . The pretrial, jurisdictional nature of certification therefore also renders *Blakely* inapposite.
>
> . . . .

Minnesota's adult-certification procedure determines jurisdiction and is not a sentence-enhancement scheme.

716 N.W.2d at 668–69.

We further concluded that the constitutionality of the adult-certification statute is not affected by *Blakely:*

> The state's juvenile system is designed primarily to protect accused juveniles from criminal prosecution and to rehabilitate them. The state may not remove a juvenile from that protection except by due process. Inasmuch as the adult certification procedure is the method to expel a juvenile from the juvenile system's protection and is not in itself a criminal prosecution, the Sixth Amendment has no direct bearing on it. We conclude that a juvenile facing adult certification does not have a Sixth Amendment right to a jury determination of the facts supporting certification. *Blakely* therefore does not render the adult-certification statute unconstitutional.

716 N.W.2d at 669. Although *J.C.P.* did not specifically address the presumptive-certification statute, we conclude that the reasoning in *J.C.P.* regarding the pretrial nature of the certification process and the inapplicability of the Sixth Amendment applies here.

Finally, this court has also held that a presumptive-certification proceeding does not result in a denial of a liberty interest because the statutory presumption "merely determines which court will try the case and evaluate the elements of the offense." *In re Welfare of L.J.S. and J.T.K,* 539 N.W.2d 408, 413 (Minn.App.1995) (holding that the presumptive-certification statute does not violate equal protection or due process), *review denied* (Minn. Jan. 25, 1996). We thus conclude that appellant's constitutional challenge of the presumptive-certification statute based on *Blakely* fails.

## II.

Appellant contends that the district court erred by determining that based on the facts this was a presumptive-certification case. Appellant argues that under the Minnesota Sentencing Guidelines, conviction of second-degree assault carries a presumptive probationary sentence of 21 months stayed and therefore the certification proceedings should have been nonpresumptive under Minn. R. Juv. Delinq. P. 18.06, subd. 2. We disagree. The district court properly based its determination on Minn.Stat. § 609.11, subd. 4 (2004), which requires that a person convicted of second-degree assault involving a deadly weapon other than a firearm be sentenced to no less than a year plus one day in prison.

Whether a criminal statute or procedural rule has been properly construed is a question of law that we review de novo. *Ford v. State,* 690 N.W.2d 706, 712 (Minn.2005); *State v. Murphy,* 545 N.W.2d 909, 914 (Minn.1996). The Minnesota certification statute provides that certification is presumed when a defendant is 16 or 17 years old at the time of the offense and the delinquency petition alleges an offense that would result in presumptive commitment under the sentencing guidelines. Minn.Stat. § 260B.125, subd. 3. The state bears the burden of showing that the juvenile is over 16 years old and that the offense alleged in the petition carries an adult sentence. *See id.; In re Welfare of K.A.P.,* 550 N.W.2d 9, 12 (Minn.App.1996) (stating that "[i]n a presumptive certification case, the state can rest its argument on proof of the juvenile's age at the time of the offense and on the seriousness of the offense"), *review denied* (Minn. Aug. 20, 1996).

When a defendant is convicted of an offense with a mandatory minimum sentence of more than one year and one day, the presumptive sentence is commitment

to the commissioner of corrections. Minn. Sent. Guidelines II.E. The presumptive duration of the sentence is "the mandatory minimum sentence according to statute or the duration of the prison sentence provided in the appropriate cell of the Sentencing Guidelines Grid, whichever is longer." *Id.*

Here, appellant was charged with aiding and abetting a second-degree assault in violation of Minn.Stat. § 609.222, subd. 1 (2004). A person convicted of second-degree assault, an offense listed in subdivision 9 of section 609.11, "in which the defendant or an accomplice, at the time of the offense, used, whether by brandishing, displaying, threatening with, or otherwise employing, a dangerous weapon other than a firearm, shall be committed to the commissioner of corrections for not less than one year plus one day." Minn.Stat. § 609.11, subd. 4.

We reject appellant's argument that because second-degree assault is a level VI offense on the Sentencing Guidelines Grid, the presumptive sentence here is only 21 months stayed. The executed one year plus one day mandatory minimum sentence prescribed in Minn.Stat. § 609.11 is longer than the recommended sentence of the sentencing grid. Therefore, because the presumptive duration of the sentence is "the mandatory minimum sentence according to statute or the duration of the prison sentence provided in the appropriate cell of the Sentencing Guidelines Grid, whichever is longer," Minn.Stat. § 609.11 controls. Minn. Sent. Guidelines II.E. We thus conclude that the district court did not err in finding that the presumptive-certification petition was appropriate based on the charge in the petition and its statutory presumptive sentence.

### III.

Appellant argues that the district court erred by finding probable cause for the charge of aiding and abetting a second-degree assault under Minn.Stat. § 609.222, subd. 1. We disagree.

Upon the filing of a motion for certification, the district court must first find that there is probable cause to believe that the juvenile committed the offenses alleged in the delinquency petition. Minn. Stat. § 260B.125, subd. 2(5). The facts establishing probable cause may be set forth in writing in the charging document or police reports may be attached to the charging document. Minn. R. Juv. Delinq. P. 6.05, subd. 1. For purposes of certification, courts presume that factual allegations in a delinquency petition are true. *In re Welfare of U.S.*, 612 N.W.2d 192, 195 (Minn.App.2000). A court should deny a motion to dismiss for lack of probable cause if it is satisfied that if the facts in the record were established at trial, it would preclude the court from granting a motion for a directed verdict of acquittal. *State v. Florence*, 306 Minn. 442, 459, 239 N.W.2d 892, 903 (1976), *modified on other grounds*. The district court's findings of probable cause "will not be disturbed on appeal unless they are clearly erroneous." *Welfare of Haaland*, 346 N.W.2d 190, 193 (Minn.App.1984) (quotation omitted).

Here, the district court found probable cause after conducting a *Florence* hearing and reviewing the evidence and police reports. The district court stated that it did not find credible appellant's allegations that he was unaware that B.J. was using a bat during the assault. The court noted that two witnesses "both said that they were able to hear somebody being hit by a bat. So it would be hard for me to believe that the [appellant], who was standing within three feet, would not be able to know that somebody was being hit by a bat."

With regard to whether appellant was aware that B.J. had a bat the district court stated:

Now, that is the only place in which I saw where they stated that he left the car holding the bat, but it is in the police report, so combining the fact that the victim reported to the police that he saw [B.J.], one of the three young men, in the group, step out of the car with the bat, and the neighbors were able to hear the victim being hit with the bat, that there certainly is probable cause to believe that the [appellant] knew that a bat was there being used, and that it also appears that there were admissions that he was hitting and kicking the victim at the same time.

Those items combined, and taken in total, the court will find probable cause exists to believe that the offenses were committed, and that the [appellant] in fact did commit those offenses.

█ We reject appellant's argument that the record contains no evidence that appellant knew B.J. would be using a bat in the assault, and therefore he cannot be charged as an aider and abetter. Under Minnesota law, a person is criminally liable for the crime of another if the person intentionally aids the perpetrator. Minn. Stat. § 609.05, subd. 1 (2004). "Under this statute, liability attaches when one plays some knowing role in the commission of the crime and takes no steps to thwart its completion." *State v. Swanson,* 707 N.W.2d 645, 658–59 (Minn.2006) (quotation omitted). Thus, appellant's argument that appellant merely intended to commit a misdemeanor assault fails because the record indicates that he knowingly ran after the victim with the other two juveniles and participated in the assault.

█ The district court also found that appellant knew that B.J. was hitting the victim with the bat, and that appellant did not try to thwart his companion's actions. Whether appellant was aware beforehand that B.J. was planning to use a bat in the assault is not determinative because intent may be inferred from factors such as, "[appellant's] presence at the scene of the crime, [appellant's] close association with the principal before and after the crime, [appellant's] lack of objection or surprise under the circumstances, and [appellant's] flight from the scene of the crime with the principal." *State v. Pierson,* 530 N.W.2d 784, 788 (Minn.1995). The record indicates that these factors were present here. And because the factual allegations of the petition are presumed to be true, we conclude that the district court's probable cause findings are reasonably supported by the record and are not clearly erroneous.

█ Finally, appellant argues that the bat was not a "dangerous weapon" based on the way it was used in this assault. Respondent contends that appellant waived this argument, because appellant did not raise the issue of whether the bat constituted a "dangerous weapon" at the *Florence* hearing. We agree. And because this court generally considers only those issues argued before and considered by the district court, *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988), we decline to address the issue.

## DECISION

We conclude that the presumptive-certification statute does not violate *Blakely* and that the district court did not abuse its discretion by determining that (1) this was a presumptive, rather than nonpresumptive, certification case; and (2) there was probable cause that appellant aided and abetted a second-degree assault involving a dangerous weapon.

**Affirmed.**