*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0337**

In the Matter of the Welfare of: J. J. M.

**Filed August 25, 2014
Affirmed
Klaphake, Judge**[*]

Ramsey County District Court
File No. 62-JV-13-2047

Cathryn Middlebrook, Chief Appellate Public Defender, Susan Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant J.J.M.)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent state)

Considered and decided by Peterson, Presiding Judge; Schellhas, Judge; and Klaphake, Judge.

## UNPUBLISHED OPINION

**KLAPHAKE**, Judge

In this appeal arising from the district court's designation of the proceeding against appellant as an extended juvenile jurisdiction prosecution, appellant contends that the district court's findings as to the seriousness of the charges are clearly erroneous and

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

that it abused its discretion by failing to consider the impact of the state's delay on the disposition. We affirm.

## D E C I S I O N

The district court designated the proceedings against appellant J.J.M. as an extended juvenile jurisdiction prosecution (EJJ), concluding that the state had proved by clear and convincing evidence that this was necessary to serve public safety. We review the district court's EJJ findings for clear error. *In re Welfare of D.M.D., Jr.*, 607 N.W.2d 432, 437 (Minn. 2000). We will reverse a juvenile certification if the district court's findings are clearly erroneous and its determination constitutes an abuse of discretion. *In re Welfare of S.J.G.*, 547 N.W.2d 456, 459 (Minn. App. 1996), *review denied* (Minn. Aug. 6, 1996).

When the state requests adult certification, but the district court does not order it, as is the case here, the district court shall designate the proceeding as EJJ if the state proves by clear and convincing evidence that this will serve public safety. Minn. R. Juv. Del. P. 18.06, subd 5; Minn. Stat. §§ 260B.125, subd. 8(b), .130, subd. 1(1) (2010). The district court considers the following six factors:

> (1) the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the Sentencing Guidelines, the use of a firearm, and the impact on any victim;
> (2) the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the Sentencing Guidelines;
> (3) the child's prior record of delinquency;

2

(4) the child's programming history, including the child's past willingness to participate meaningfully in available programming;

(5) the adequacy of the punishment or programming available in the juvenile justice system; and

(6) the dispositional options available for the child.

Minn. Stat. § 260B.125, subd. 4 (2010). The seriousness of the offense and the juvenile's prior record are given more weight than the other factors. *Id.* Here, the district court found that the first and second factors weighed in favor of adult certification, the third and fourth factors weighed against adult certification, and the fifth and sixth factors weighed in favor of EJJ designation. J.J.M. argues that the district court erred in its determination on factors one, five, and six.

**Seriousness of the alleged offense**

The district court found that the crimes alleged against J.J.M., possession of child pornography and surreptitious interference with the privacy of a minor, are serious in nature, favoring adult certification. J.J.M. contends that the "evidence failed to establish that the seriousness of [the] offenses favored certification." We disagree.

J.J.M. argues that the district court erroneously relied on the facts alleged in the delinquency petitions and placed too much emphasis on the fact that the crimes involved child victims, and asserts that the "charged offense alone does not determine the risk to public safety." *Matter of Welfare of K.A.P.*, 550 N.W.2d 9, 12 (Minn. App. 1996). But when considering whether to certify an individual as an adult, the court presumes that the factual allegations contained in the petition are true. *In re Welfare of S.W.N.*, 541

3

N.W.2d 14, 16 (Minn. App. 1995), *review denied* (Minn. Feb. 9, 1996). Moreover, the district court did not confine its analysis to the nature of the alleged offenses.

J.J.M. also argues that the alleged offenses "do not pose a serious threat to public safety" because they are designated as low severity levels under the sentencing guidelines and the court found no aggravating factors. But whether there are aggravating factors present is just one consideration incorporated into the statute, and any offense that would be a felony if committed by an adult is eligible for certification when a child who is older than 14 allegedly committed that crime. Minn. Stat. § 260B.125, subd. 1 (2010).

J.J.M. further argues that both parties' experts testified to a low risk of re-offense, which weighs against a finding that the offense was serious, citing *In re Welfare of H.S.H.*, 609 N.W.2d 259 (Minn. App. 2000). But the offense in *H.S.H.* was check fraud, a non-violent property crime. *Id.* at 260. Here, although the experts opined that J.J.M.'s risk of re-offense is low, the state's expert testified that the alleged offenses are serious in nature, J.J.M.'s probation officer testified about the need for sex-offender treatment to prevent future offenses, and the district court concluded that the alleged offenses demonstrated a possible escalation in the seriousness of the offenses. *See id.* at 262 (stating that seriousness of an offense can be gleaned from a pattern of escalation and expert opinion that such behavior will continue). Here, J.J.M. allegedly went from downloading child pornography to recording undressed minors without consent and then to taking "some of the most graphic images from [the] video and converting them into still pictures."

The district court did not clearly err by determining that the crimes J.J.M. allegedly committed are serious in nature, weighing in favor of EJJ designation to serve public safety.

**Adequacy of punishment or programming and dispositional options**

The district court concluded that J.J.M.'s need for sex-offender treatment, supervision, and punishment could not be met under standard juvenile-court jurisdiction because J.J.M. is 19 years old, and therefore EJJ designation was necessary to protect public safety. J.J.M. argues that the district court's analysis on the issues of adequacy of punishment or programming and dispositional options failed to mention "that the state's thirteen-month investigative delay was the reason a straight juvenile disposition was no longer an option," and did not consider "the pivotal role the state played in eliminating the most favorable dispositional option for [J.J.M.]." We disagree.

J.J.M. acknowledges that the district court rejected the argument that the state purposely delayed the investigation to gain an unfair advantage, but contends that "the delay was intentional and avoidable," asserting that the "prejudice to [J.J.M.] is the same . . . whether the state delayed to gain an unfair advantage or . . . because it was indifferent to [J.J.M.'s] juvenile status." J.J.M. relies on speedy-trial cases to argue that the delay should be weighed against the state, contending that the "interests of justice were clearly not served when the juvenile court weighed the fallout *from* the state's delay *for* the state." But there is no precedent equating speedy-trial issues to adult certification or EJJ designations, and the standard J.J.M. proposes is without merit.

5

Minn. Stat. § 260B.125, subd. 6 (2010), provides that the district court may consider adult or EJJ certification when an adult is charged by juvenile delinquency petition with an offense alleged to have occurred before the adult's 18th birthday, but that the matter may not be certified "if the adult demonstrates that the delay was purposefully caused by the state in order to gain an unfair advantage." J.J.M. made no such showing. Further, "[i]nsufficient time for rehabilitation under the juvenile system is an appropriate consideration when determining whether to certify a juvenile." *In re Welfare of S.J.T.*, 736 N.W.2d 341, 354 (Minn. App. 2007), *review denied* (Minn. Oct. 24, 2007). When the state did not delay with an improper purpose, the district court need not consider the state's delay in its decision to designate the matter as EJJ, as long as the court's ruling is based on public safety.

Here, the district court concluded that public safety is best served by designating the matter as EJJ because J.J.M. needs treatment and supervision that is otherwise unavailable in the juvenile justice system, but that his needs do not rise to the public-safety-concern level of certifying him as an adult on these charges. J.J.M. does not dispute the district court's assessment that he needs treatment and supervision and there is adequate evidence in the record to support this finding. The district court did not abuse its discretion by concluding that J.J.M.'s need for treatment and punishment necessitate an EJJ designation in the interest of public safety.

**Affirmed.**