In re the Matter of the WELFARE OF J.A.R., Jr.

No. C7–86–1644.

Court of Appeals of Minnesota.

June 30, 1987.

Review Denied Aug. 26, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent, Hennepin County.

William R. Kennedy, Hennepin County Public Defender, Warren R. Sagstuen, Asst. Public Defender, Minneapolis, for appellant J.A.R.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and STONE, JJ.*

## OPINION

BRUCE C. STONE, Judge.

J.A.R., a juvenile charged with two counts of murder in the first degree, appeals the trial court's order referring appellant for prosecution as an adult. We affirm.

## FACTS

On June 6, 1986, J.A.R. was charged with two counts of murder in the first degree, one count of premeditated murder and one count intentional murder while attempting to commit burglary. *See* Minn. Stat. § 609.185(1) and (3) (1984). The State moved the juvenile court to refer J.A.R. to adult court pursuant to Minn.Stat. § 260.-125 (1984). The juvenile court found probable cause that J.A.R. committed the offenses and in a subsequent order, filed on September 2, 1986, referred appellant to stand trial as an adult for the alleged offenses.

At the time of the alleged crime, J.A.R. was fourteen years and nine months of age. His prior contact with the juvenile court included adjudications of incorrigibility in January 1986 and lurking with intent to commit a crime in April 1986. Appellant has had violent episodes with his mother and has been suspended from school for misbehavior, including fighting.

The trial court's reference order includes findings on the facts of the offense. These facts are not in dispute for purposes of this appeal. *See In re Welfare of S.R.J.*, 293 N.W.2d 32, 33 (Minn.1980) (for purposes of the reference hearing, the charges are assumed to be true). At around 11:00 p.m. on June 3, 1986, appellant entered the home of Ruth Lyke, a widow who resided alone. Entry was made by cutting the screen to the second floor bathroom window. On the second floor of the Lyke home, a confrontation occurred between appellant, who was armed with a six inch lock

* Acting as judge of the Court of Appeals by ap-   pointment pursuant to Minn. Const. art. 6, § 2.

blade knife, and Ruth Lyke, who was unarmed. Ruth Lyke was stabbed approximately ten times, and died on her second story bathroom floor from a loss of blood. Appellant received some minor cuts and scratches. He eventually exited the house through a side door on the first floor, after throwing the lock blade knife down the basement stairs. Appellant was arrested on the following day at his home, which was located behind the Lyke home.

The trial court further found that for some period of time prior to June 3, 1986 there was hostility between appellant and Ms. Lyke. The evidence indicated appellant made rude sexual remarks to Ms. Lyke. Appellant, on his part, reported he believed Ms. Lyke was staring at him. Around June 3, 1986, Ms. Lyke discovered that her purse and house keys were missing. Ms. Lyke suspected appellant had entered her home and taken these items. She expressed fear to family members that appellant would reenter her home and she consequently had the locks to her home changed on June 3, 1986. Her purse was subsequently found in appellant's garbage can.

Appellant has remained in the Hennepin County Juvenile Detention Center since his arrest on June 5, 1986. While there, appellant has been evaluated by three psychologists, a psychiatrist and Hennepin County Court Services. He has also received therapy from a psychotherapist. The Minnesota Multiphasic Personality Inventory (MMPI) was administered twice. Appellant's profile on the first MMPI indicated appellant might be psychotic. The second MMPI was not indicative of psychosis, but nevertheless showed above normal deviations in scales measuring impulsivity and depression. All experts agreed that the differences between the two MMPI's were due, at least in part, to a reduction in stress once appellant became accustomed to the juvenile detention center.

In summarizing the expert evaluations, the trial court stated:

> [Appellant] is not currently suffering from any thought disorder or major mental illness. He is in the dull, normal range intellectually, and has a paranoid personality structure. His paranoia is chronic rather than acute, and he requires long-term treatment in a secure facility, including both individual psychotherapy and group therapy. The treatment process will most likely take longer than four years.

The trial court referred appellant to adult court based on its conclusion, "[appellant] is not suitable for treatment within the juvenile system because of the length of treatment necessary and the lack of secure facilities," and because the public safety is not served under the provisions of the laws relating to juvenile courts.

## ISSUE

Did the trial court abuse its discretion in referring appellant for prosecution as an adult?

## ANALYSIS

A trial court has broad discretion to determine whether to refer a juvenile for prosecution as an adult, and its decision will not be reversed unless contrary to the law or based on clearly erroneous findings. *In re Welfare of I.Q.S.*, 309 Minn. 78, 86–87, 244 N.W.2d 30, 38 (1976).

If a child over 14 years of age is alleged to have violated a law, the juvenile court may refer the child for prosecution as an adult. Minn.Stat. § 260.125, subd. 1. At the time of the alleged crime, J.A.R. was fourteen years and nine months old.

Once the court determines that probable cause exists to believe the child committed the offense alleged, the state must show by clear and convincing evidence that "the child is not suitable to treatment or that the public safety is not served under the provisions of laws relating to juvenile courts." Minn.Stat. § 260.125, subd. 2(d) (1984); *see also* Minn.R.P.Juv.Ct. 32.05. The state may prove the case for reference by clear and convincing evidence of "*either* * * * nonamenability to treatment or dangerousness * * * *or* [an offense establishing a prima facie case]." *In re Welfare of*

*D.M.*, 373 N.W.2d 845, 848 (Minn.Ct.App. 1985) (emphasis in original).[1]

 When deciding whether the juvenile is dangerous or nonamenable to treatment, the court is required to consider the totality of the circumstances. Minn.R.P.Juv.Ct. 32.05, subd. 2. Eleven specific factors that may be considered in making this determination are provided in the rule. *Id.*

 The trial court specifically considered each of these factors in its findings and concluded that,

> in this case nine of the eleven criteria enumerated in Rule 32.05 support certification and two do not. The additional factor of [appellant's] mental state also supports certification.

The two factors which "arguably" did not support certification were appellant's immaturity and his relatively short record and previous history with the juvenile system. The court specifically noted however, that even the latter is not totally supportive of J.A.R.'s position, because J.A.R.'s "history in the year or two prior to the offense indicates a significant emotional and behavioral deterioration."

 Appellant claims the trial court improperly placed too much emphasis on the violent nature of the offense charged. We disagree. First, it is proper for the court to consider the violent nature of the offense in deciding whether reference is appropriate. The factors listed in Rule 32.05 expressly authorize the trial court to consider the violent nature of the offense when assessing the totality of the circumstances. *Id.* at (c), (d) and (i). Second, the court specifically stated that there was direct evidence of appellant's dangerousness in addition to the offense itself, referring to appellant's numerous instances of acting out violently against his peers and mother. This finding is supported by the evidence.

 The court evaluated the evidence concerning appellant's mental condition and concluded that appellant's disorder is a "firmly entrenched, long term condition" and that treatment will most likely take longer than the four years in which the juvenile court will retain jurisdiction. The trial court also considered the dispositions available to the juvenile court and concluded that the juvenile system lacked long term secure facilities in which to treat appellant. These findings are supported by the evidence.

While courts may be reluctant to refer younger juveniles accused of serious crime for trial as an adult, the obvious and demonstrated violence, the prior hostility and the lack of appropriate treatment programs that could be satisfactorily completed in the remaining four years, makes it clear that reference is appropriate in this case.

### DECISION

The trial court's order for reference is affirmed.

Affirmed.

---

1. The statutory provision for establishing a prima facie case for reference is not applicable because J.A.R. was not 16 years of age at the time of the alleged offense. *See* Minn.Stat. § 260.125, subd. 3.