### In re WELFARE OF W. J. R.

No. 46758.

Supreme Court of Minnesota.

March 17, 1978.

Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Vernon E. Bergstrom, David W. Larson and Phebe S. Haugen, and Lee Barry, Asst. County Attys., Minneapolis, for appellant.

William R. Kennedy, Hennepin Co. Public Defender, Catherine L. Anderson, Asst. Public Defender, Minneapolis, for respondent.

PER CURIAM.

The state appeals from an order of the juvenile division of the district court denying its motion for certification of the subject juvenile for prosecution as an adult.

W. J. R., a juvenile, is accused of acting in concert with two other persons in inflicting great bodily harm upon another. The state moved for an order referring the juvenile for prosecution as an adult pursuant to Minn.St. 260.125, on a charge of aggravated assault. At the reference hearing, the state attempted to introduce certain statements made by the juvenile to the police subsequent to his arrest which tended to establish facts regarding the circumstances of the offense and the juvenile's state of mind. The court ruled these statements inadmissible. Acting largely on the opinion of one of the two psychologists who had examined the juvenile to the effect that an appropriate treatment facility existed at Wolf Lake in northern Minnesota, the court denied the state's motion for certification as

an adult. The only issue on this appeal is whether the juvenile court erred in refusing to admit the statements made by the juvenile to police.

■ A reference hearing is held only to determine the propriety of prosecuting the juvenile as an adult. The ultimate questions to be answered by the hearing are whether the juvenile is suitable to treatment and whether the public safety is served by handling the matter within the juvenile court system. Section 260.125, subd. 2(d). If either condition is not satisfied, the court should refer the matter for adult prosecution. For purposes of the reference hearing, the charges against a juvenile are presumed to be true. Evidence is not admissible for the purpose of proving the truth of the accusations.

The juvenile court in the instant case was therefore of the opinion that any evidence concerning the circumstances of the offense was inadmissible. In ruling on the proffered statements, the court said:

> " * * * I see no reason to clutter the record trying once more to explain what I understand the issues are before this Court. At this point the Probable Cause has been waived and therefore I presume that the charges against the child are true as set [forth] in the Petition. Therefore, I see no reason going into the circumstances of the charges any more as they are presumed to be true. I don't know why you want to elaborate on the circumstances of the charges because we presume them true by waiver of the Probable Cause Hearing. I can say no more. I have tried every way I can to explain the position of the Court."

A distinction must be made between evidence offered solely as proof of the charges and evidence of the attendant circumstances if they bear on the central issues of suitability for treatment and public safety. It is assumed that the state will be able to prove the assault, but this tells very little about the nature of the incident. The delinquency petition alleged only that the juvenile and two other persons "each aiding the other and acting in concert did wilfully inflict great bodily harm" upon another person. It does not disclose the nature of the victim's injuries, whether the juvenile was the motivating force or a mere passive participant, or what the juvenile's state of mind was.

■ There was considerable expert testimony relating to the juvenile's amenability to treatment. If the circumstances surrounding the offense were of a mitigating character and tended to show amenability to treatment, they should be admissible for that reason. However, the second element mentioned in § 260.125, subd. 2(d)—the public safety—must be considered also. In *State v. Hogan*, 297 Minn. 430, 438, 212 N.W.2d 664, 669 (1973), we enumerated the following six factors as relevant to the determination of whether the public safety would be served:

> " * * * (1) The seriousness of the offense in terms of community protection: (2) the circumstances surrounding the offense; (3) whether the offense was committed in an aggressive, violent, premeditated, or wilful manner; (4) whether the offense was directed against persons or property; (5) the reasonably foreseeable consequences of the act; and (6) the absence of adequate protective and security facilities available to the juvenile treatment system."

It seems clear to us that the statements at issue here were relevant in light of the above considerations. The juvenile had a history of 39 prior contacts with the juvenile court system, including some for such serious offenses as assault, burglary, and arson. There was evidence of his aggressive nature and tendency to run away from juvenile facilities. The court evidently was concerned with security in ordering the juvenile detained at the Wolf Lake facility under certain restrictions.[1] While there is considerable information about the juvenile

---

1. We note that despite the concern over security measures the juvenile escaped from the Wolf Lake facility and was eventually returned.

in the record, we see no reason for not having all relevant information bearing on such an important issue in the record.

■ The juvenile argues that the state failed to make a sufficient offer of proof. The state offered to introduce statements bearing on the circumstances of the offense and the juvenile's state of mind. The offer was conclusory in its characterization of the statement, and no specifics were offered as to the circumstances of the offense. We do not know how relevant or important the evidence would be and must rule the offer of proof was insufficient. Even though the court ruled that circumstances of the offense would not be admissible, the prosecution should have attempted to make an adequate offer of proof. We are persuaded that the offer of proof was inadequate and that in the light of all the evidence received, it would not change the result.

■ It should be noted that the hearing in the juvenile court was neither an adjudicatory hearing to determine guilt nor a probable cause hearing but rather was solely for the purpose of determining whether the juvenile should be prosecuted as an adult or treated as a juvenile in the juvenile system. This type of hearing is sometimes called a reference hearing or a transfer hearing. For this reason, *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), is not applicable here. In *Breed*, a petition was filed in the juvenile court in the County of Los Angeles, California, alleging that a juvenile had committed acts which if committed by an adult would constitute the crime of robbery. A detention hearing was held, and the juvenile was ordered detained. Next an adjudicatory hearing was held, and the juvenile court found the allegations in the petition were true and sustained the petition. Then a dispositional hearing was held, and as a result of that hearing, the juvenile court declared the juvenile was unfit for treatment as a juvenile and ordered that he be prosecuted as an adult. Thereafter, he was charged as an adult with robbery and found guilty although he pleaded double jeopardy by reason of having been previously convicted of the crime charged by juvenile court.

■ In *Breed*, the Supreme Court of the United States held that by reason of the proceedings in juvenile court the juvenile was twice put in jeopardy by concluding "that respondent [juvenile] was put in jeopardy at the adjudicatory hearing." 421 U.S. 531, 95 S.Ct. 1787, 44 L.Ed.2d 357. In the instant case, there was no adjudicatory hearing, and none is required under our statutes in order to determine whether or not a juvenile should be tried as an adult. Nonetheless, evidence of the crime may be admitted, if otherwise relevant, for the purpose of proving probable cause or for the purpose of proving that a juvenile should be transferred from the juvenile court to a court of general criminal jurisdiction. In the case before us, a probable cause hearing was waived. The only question, then, is whether the evidence offered was relevant to the transfer issue. In *Breed*, the Supreme Court stated:

"We note that nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding. See *Collins v. Loisel*, 262 U.S. 426, 429, [43 S.Ct. 618, 629, 67 L.Ed. 1062, 1064] (1923); *Serfass v. United States*, 420 U.S. 377, 391–92, [95 S.Ct. 1055, 1061, 43 L.Ed.2d 265, 275] (1975). The instant case is not one in which the judicial determination was simply a finding of, *e. g.*, probable cause. Rather, it was an adjudication that respondent had violated a criminal statute." 421 U.S. 538, note 18, 95 S.Ct. 1790, 44 L.Ed.2d 360.

In *Breed*, the Supreme Court contemplated that in most states there would be transfer hearings with differing statutory provisions but apparently insisted that the transfer decision be made prior to an adjudicatory hearing. This conclusion seems obvious from the following portion of that court's opinion:

"The possibility of transfer from juvenile court to a court of general criminal jurisdiction is a matter of great significance to the juvenile. * * * At the same time, there appears to be widely shared agreement that not all juveniles can benefit from the special features and programs of the juvenile-court system and that a procedure for transfer to an adult court should be available. * * * This general agreement is reflected in the fact that an overwhelming majority of jurisdictions permits transfer in certain circumstances. As might be expected, the statutory provisions differ in numerous details. Whatever their differences, however, such transfer provisions represent an attempt to impart to the juvenile-court system the flexibility needed to deal with youthful offenders who cannot benefit from the specialized guidance and treatment contemplated by the system.

"We do not agree with petitioner that giving respondent the constitutional protection against multiple trials in this context will diminish flexibility and informality to the extent that those qualities relate uniquely to the goals of the juvenile-court system. We agree that such a holding will require, in most cases, that the transfer decision be made prior to an adjudicatory hearing. To the extent that evidence concerning the alleged offense is considered relevant, it may be that, in those cases where transfer is considered and rejected, some added burden will be imposed on the juvenile courts by reason of duplicative proceedings." 421 U.S. 535, 95 S.Ct. 1788, 44 L.Ed.2d 359.

█ It follows from the foregoing that if evidence of the crime charged is relevant to show that the juvenile is not amenable to treatment in the juvenile system or for other statutory reasons should be transferred and tried as an adult, it is admissible even though it may tend to show that the crime was committed by the juvenile. After all, the same result would be reached in attempting to prove probable cause. In *People In Interest of L. V. A.*, S.D., 248 N.W.2d 864 (1976), *Breed* was held to be inapplicable to the transfer under the South Dakota statute because the transfer hearing was held before the adjudication hearing.

The Supreme Court of Montana citing *Breed* decided in *In re Stevenson*, 167 Mont. 220, 538 P.2d 5 (1975), that juvenile transfer hearings are not adjudicatory hearings within the meaning of constitutional requirements.

In *Stokes v. Commonwealth*, Mass., 336 N.E.2d 735 (1975), the Supreme Court of Massachusetts interpreted *Breed* in much the same way as we do.

The order refusing to refer the juvenile for prosecution as an adult is affirmed.

OTIS, Justice (dissenting in part).

I agree with that part of the foregoing opinion which holds that statements made by the juvenile at the time of his arrest were relevant to the question of whether or not the public safety is served by his treatment under the laws relating to juvenile courts. However, I dissent from so much of the opinion as holds that the prosecutor's offer of proof was inadequate and that in the light of the evidence received it would not change the result.

The pertinent portions of the colloquy by the counsel and the court are set forth as follows:

"MRS. BEITZ: The sole purpose of the testimony of this Witness is to introduce the statements of [the juvenile] made to this officer as to his involvement in the offense which was charged. It was not introduced for the purpose of ascertaining Probable Cause but again to get at factors which the Supreme Court has said are relevant concerning the seriousness of the offense, the circumstances surrounding the offense, and other aspects as it gets to the juvenile state of mind, involvement, and I think these are crucial issues for the Court to be able to consider in determining whether or not the juvenile system can cope with this particular individual.

"THE COURT: * * * I can't see that review of all the facts and circum-

stances has any bearing on answering that question. You can show such evidence as to whether he would abscond from juvenile institutions, you can show evidence bearing upon whether he is too dangerous to be handled in juvenile institutions as they now exist, but I'm not going to try the case all over again. Therefore, the objection is sustained as the question is asked and to the offer of proof as presented.

\* \* \* \* \* \*

"MRS. BEITZ: I'm having difficulty understanding why the statements of this young man as it relates to what he did and how he did it do not relate to his dangerousness. I will concede they do not relate to whether he may abscond but I am failing to understand the Court and I guess I would object to its, excuse me, take exception to its ruling that this evidence is inadmissible.

"THE COURT: \* \* \* It is not so much what the child did but to prognosticate whether he must be handled in an adult prison or in a juvenile facility and I think that's the only thing we are concerned with at this point.

"MRS. BEITZ: Your Honor, I guess I would argue that we cannot understand whether or not the juvenile system can handle this boy unless we understand what, in fact, he did.

"THE COURT: That's admitted by the Petition. The Probable Cause Hearing has been waived.

"MRS. BEITZ: Well, Your Honor, if I may comment on that. I have no right to a Probable Cause Hearing. If the Public Defender waives a Probable Cause Hearing that in effect precludes the State from pressing evidence as I understand your ruling on one of the two distinctive aspects which the Court has said which the Supreme Court states and which the statute says this Court has to consider and that is the dangerousness, and I think that, I would, I guess all I can do is preserve my record in saying by denying the admissibility of this evidence the Court is refusing to hear relevant evidence from the mouth of the individual involved as to the circumstances surrounding this offense and I would simply take exception and preserve my record.

\* \* \* \* \* \*

"THE COURT: To go back, that is not the ruling of the Court, Mrs. Beitz, but perhaps the only way you can prove all these things. I think I have tried three times to explain it. I see no reason to clutter the record trying once more to explain what I understand the issues are before this Court. At this point the Probable Cause has been waived and therefore I presume that the charges against the child are true as set [forth] in the Petition. Therefore, I see no reason going into the circumstances of the charges any more as they are presumed to be true. I don't know why you want to elaborate on the circumstances of the charges because we presume them true by waiver of the Probable Cause Hearing. I can say no more. I have tried every way I can to explain the position of the Court. Now, let's proceed."

The persistent efforts of the prosecutor to persuade the court that statements made by the juvenile at the time of his apprehension directly bore on his dangerous propensities were consistently rebuffed by the trial court. The court made it clear that regardless of what those statements revealed with respect to the juvenile's behavioral impact on public safety, the court would not permit the statements into evidence. In my opinion, it is unfair and unjust to suggest that the prosecutor had a duty to persist further in the face of the court's growing impatience over counsel's continuing to argue the matter.

Because we are holding that the statements of the juvenile were relevant, I would remand for the purpose of receiving them into evidence. Since we do not know what those statements would reveal, I cannot agree that they would not change the results as the foregoing opinion concludes.

PETERSON, Justice (dissenting in part).

I join in the opinion of Mr. Justice Otis.