*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1142**

In the Matter of the Welfare of: P. D. H.

**Filed January 19, 2016
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-JV-14-6502

Mary F. Moriarty, Hennepin County Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, Minnesota (for appellant P.D.H.)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Reilly, Presiding Judge; Worke, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant challenges a juvenile court order certifying him to stand trial as an adult on a felony charge of being a prohibited person in possession of a firearm. Because the district court did not abuse its discretion in permitting the prosecutor to reopen the case and properly applied the six statutory-certification factors in certifying, we affirm.

## FACTS

Hennepin County filed a juvenile delinquency petition charging appellant P.D.H. with felony possession of a firearm, stemming from an incident on April 27, 2014, when Minneapolis police officers found an adult female lying on the kitchen floor of a residence with a gunshot wound to her abdomen.[1]  Appellant and three other males were inside the residence with the woman, and appellant was videotaping the incident on his cellular phone.  The police officers saw a discharged casing on the kitchen floor and a magazine loaded with 9mm rounds on the living room floor.  The police officers executed a search warrant and found a Springfield 9mm black handgun with a silver slide in an upper-level bedroom.  Appellant denied knowing that a handgun was present in the home.  The police later executed a search warrant on appellant's phone and found numerous photographs of the Springfield 9mm handgun, including eight photographs of appellant with the handgun. The photographs include appellant holding the handgun and pointing it at the phone, and holding the handgun and pointing it at his own head.  The photographs were created on April 27, 2014, between 1:21 a.m. and 1:25 a.m.

The state moved to certify appellant as an adult.  The juvenile court held a contested adult certification hearing.

---

[1] P.D.H. was born on October 30, 1996, and was 17½ years old at the time of this offense. In October 2011 appellant was adjudicated delinquent of first-degree aggravated robbery, a crime of violence, and banned from possessing a firearm as a result of that adjudication. Minn. Stat. § 624.713, subd. 1(2).

The parties stipulated to the admission of a psychological evaluation report completed by Dr. Berrin and a Presumptive Certification Study from probation officer Ms. Linden. Dr. Berrin's report "expressed concern regarding [appellant's] lengthy delinquency history, pattern of disengagement with providers, and probation violations," but made no recommendation regarding certification. Ms. Linden's report recommended certification to adult court based on appellant's "extensive delinquency history," including delinquency adjudications for tampering with a motor vehicle, fleeing a police officer, theft, disorderly conduct, first-degree aggravated robbery, fourth-degree damage to property, and felony possession of a stolen firearm. Ms. Linden's report reviewed each of the six public safety factors and noted that appellant was charged with a serious crime, had a lengthy delinquency history including numerous felony adjudications, and was culpable of the alleged offense. Ms. Linden concluded that certification to adult court was appropriate. Ms. Linden was present in the courtroom throughout the hearing but was not called to testify during the state's case-in-chief. The state also offered photographs taken from appellant's phone showing him pointing a handgun at the camera and at his own head.

Appellant presented the testimony of Dakota County probation officer Ms. Albrecht. She testified regarding the six public safety factors and stated that certain factors weighed in favor of certification, while other factors weighed against it.

Following testimony, a brief off-the-record discussion was held at the bench and the state moved to reopen testimony to call Ms. Linden to the stand. Appellant objected to the motion and the juvenile court judge overruled the objection, stating:

Ms. Linden sat through the testimony of Ms. Albrecht. I think I would actually like to know whether that changed since I'm being asked in part to rely on her recommendation whether that made any change in her recommendation.

Ms. Linden took the stand and confirmed that she was present in the courtroom during Ms. Albrecht's testimony. The following exchange occurred:

[Prosecutor]: Your overall recommendation for certification, has that changed at all?

[Witness]: No.

The defense did not cross-examine Ms. Linden. The juvenile court offered both parties the opportunity to "supplement [their] arguments based on [Ms. Linden's] testimony," but they declined. The juvenile court issued an order granting the state's motion for presumptive adult certification, and this appeal follows.

## DECISION

Appellant raises two issues on appeal. First, appellant argues that the juvenile court abused its discretion by permitting the state to reopen the case and solicit additional testimony from Ms. Linden after closing arguments. Second, appellant claims that the juvenile court abused its discretion by certifying appellant's case to adult court. We address each argument in turn and conclude that the juvenile court acted within its sound discretion in permitting the state the reopen the case and in ultimately certifying appellant's case for adult court.

## I.

Appellant argues that the juvenile court denied him a fair trial by granting the state's motion to reopen the case and introduce testimony from a witness after closing arguments.

4

Allowing a party to reopen its case for the purpose of presenting additional testimony is within the discretion of the trial court and "will not be disturbed on appeal absent a showing of abuse of that discretion." *King v. Larsen*, 306 Minn. 546, 546, 235 N.W.2d 620, 621 (1975) (citations omitted). On appeal, appellant bears the burden of establishing that the court abused its discretion and that appellant was thereby prejudiced. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

Appellant challenges the "manner in which the court handled the reopening" and claims that the juvenile court judge initiated the bench conversation. The state responds by arguing that a certification proceeding is not an adjudicatory trial. We recognize that a certification hearing "is properly distinguished from an adjudicatory hearing" in that "[f]or purposes of the hearing the charges are assumed to be true and the only issues for the court are public safety and the juvenile's amenability to treatment." *In re Welfare of T.D.S.*, 289 N.W.2d 137, 140 (Minn. 1980); *see In re Welfare of W.J.R.*, 264 N.W.2d 391, 394 (Minn. 1978) ("It should be noted that the hearing in the juvenile court was neither an adjudicatory hearing to determine guilt nor a probable cause hearing but rather was solely for the purpose of determining whether the juvenile should be prosecuted as an adult or treated as a juvenile in the juvenile system."). Thus, when conducting a certification hearing, the juvenile court "may receive any information, except privileged communication, that is relevant to the certification issue, including reliable hearsay and opinions." Minn. R. Juv. Delinq. P. 18.05, subd. 4(B). Further, "[i]n the interests of justice," the juvenile court may "permit either party to offer additional evidence" in rebuttal. *Id.*, subd. 4(C)(5).

Here, Ms. Linden submitted a report recommending certification. The parties stipulated to the admission of her report into evidence. Ms. Linden was present in the courtroom during the hearing and heard the testimony of appellant's witness, Ms. Albrecht. Ms. Linden took the stand and the state inquired whether her certification recommendation had changed in light of Ms. Albrecht's testimony. Ms. Linden testified that her recommendation to certify appellant to adult court had not changed. Although appellant argues that the court was "trying the [s]tate's case for the prosecutor," it is also possible that Ms. Linden could have changed her recommendation after listening to Ms. Albrecht's testimony. Ms. Linden's testimony was relevant to the certification issue and we see no error in the juvenile court's decision to permit the state to offer additional evidence in rebuttal.

Moreover, appellant has not demonstrated that he was prejudiced by the juvenile court's decision to reopen testimony. *See Sports Page, Inc. v. First Union Mgmt., Inc.*, 438 N.W.2d 428, 430 (Minn. App. 1989) (affirming district court's decision to allow party to reopen case to submit additional evidence where "no inadvertence, forgetfulness, lack of preparation, or bad faith was exhibited by either party," because "[t]he delay in presentation of the evidence did not prejudice appellant"). The juvenile court served as the fact-finder for the certification hearing. The risk of unfair prejudice to a defendant in admitting evidence is "reduced because there is comparatively less risk that the district court judge, as compared to a jury of laypersons, would use the evidence for an improper purpose or have his sense of reason overcome by emotion." *State v. Burrell*, 772 N.W.2d 459, 467 (Minn. 2009). The risk of unfair prejudice to appellant in reopening the case and calling

Ms. Linden to the stand was similarly small. We therefore conclude that appellant has not met his burden of establishing that the juvenile court abused its discretion in reopening the hearing, and we affirm the juvenile court's decision.

**II.**

Appellant also argues that the juvenile court abused its discretion by certifying appellant to adult court. "A district court's decision to certify a juvenile for adult prosecution is entitled to considerable latitude." *In re Welfare of H.S.H.*, 609 N.W.2d 259, 261 (Minn. App. 2000) (quotation omitted). We will not reverse a "certification order unless the district court's findings are clearly erroneous so as to constitute an abuse of discretion." *Id.* (quotation omitted). "When determining whether findings are clearly erroneous, an appellate court views the record in the light most favorable to the trial court's findings." *In re Custody of N.A.K.*, 649 N.W.2d 166, 174 (Minn. 2002).

It is the general rule that children charged with a crime are to remain in the juvenile system. Minn. Stat. § 260B.101, subd. 1 (2014). However, when a juvenile is 16 or 17 years old at the time of the alleged offense and the offense carries a presumptive prison sentence under the Minnesota Sentencing Guidelines, it is "presumed" that the juvenile court will certify a case for adult prosecution. Minn. Stat. § 260B.125, subd. 3 (2014). The juvenile may rebut this presumption with "clear and convincing evidence that retaining the proceeding in the juvenile court serves public safety." *Id.* Clear and convincing evidence "requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt." *State v. Miller*, 754 N.W.2d 686, 701 (Minn. 2008) (quotation omitted).

7

The juvenile court considers six factors when determining whether to retain the proceedings in juvenile court:

> (1) the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the Sentencing Guidelines, the use of a firearm, and the impact on any victim;
>
> (2) the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the Sentencing Guidelines;
>
> (3) the child's prior record of delinquency;
>
> (4) the child's programming history, including the child's past willingness to participate meaningfully in available programming;
>
> (5) the adequacy of the punishment or programming available in the juvenile justice system; and
>
> (6) the dispositional options available for the child.

Minn. Stat. § 260B.125, subd. 4 (2014).

In considering these factors, the juvenile court must give greater weight to the seriousness of the alleged offense and to the child's prior record of delinquency. *Id.* The purpose of these factors is to assess whether the juvenile presents a risk to public safety and a likelihood of reoffending in the future. *H.S.H.*, 609 N.W.2d at 262. The juvenile court examined the six factors and determined that each statutory factor weighed in favor of adult certification and that appellant failed to rebut the presumption of certification.

**Seriousness of the offense**

The first public safety factor directs the juvenile court to consider the seriousness of the offense. Minn. Stat. § 260B.125, subd. 4(1). The juvenile court must also consider the

8

existence of any aggravating factors, whether a firearm was used in the offense, and the impact on the victim, if any. *Id.* "For purposes of the certification hearing, the charges against the child are presumed to be true." *In re Welfare of N.J.S.*, 753 N.W.2d 704, 708 (Minn. 2008).

Appellant was charged with being a prohibited person in possession of a firearm in violation of Minn. Stat. § 624.713, subd. 1(2), 2(b). The offense carries a presumptive 60-month prison sentence. Minn. Stat. § 609.11, subd. 5. The juvenile court determined that appellant's crime "is a very serious offense in terms of community protection and this factor weighs in favor of certification." The factual record supports this determination. The police responded to an emergency call and found a woman lying on the floor with a gunshot wound to her abdomen. Police officers found a magazine loaded with 9mm rounds and a Springfield 9mm black handgun with a silver slide in the house. Police officers later found photographs of the Springfield 9mm handgun on appellant's phone, taken on the same day.

Appellant concedes that the offense is "a serious matter," but argues that it was "a victimless crime" and there is not clear and convincing evidence that the firearm found in the house "is the same firearm depicted in the photographs on [appellant's] I-Phone." The petition stated that there were numerous photographs of the Springfield 9mm handgun on appellant's phone, including eight photographs of appellant holding the handgun and pointing it at his head or at the camera. For purposes of certification, "courts presume that factual allegations in a delinquency petition are true." *In re Welfare of D.W.*, 731 N.W.2d 828, 834 (Minn. App. 2007). The juvenile court's findings regarding the seriousness of

9

the offense are not clearly erroneous and the court did not abuse its discretion in determining that the first factor weighs in favor of certification.

**Culpability of the child**

The second public-safety factor involves "the culpability of the child in committing the alleged offense." Minn. Stat. § 260B.125, subd. 4(2). In this case, the juvenile court found that appellant's culpability weighs in favor of adult certification, stating that: "[appellant] is solely responsible for being in possession of a handgun after he was previously adjudicated delinquent for Aggravated Robbery in the 1st Degree (Felony), and there are no mitigating factors recognized under the Minnesota Sentencing Guidelines."

Appellant contends that the juvenile court's culpability determination is erroneous because the handgun in the photographs has not been forensically linked to the handgun found in the home, there was no evidence that the victim identified appellant as the shooter, and there were other men present in the home. As stated, "[f]or purposes of a certification determination, the charges against the child and the factual allegations of the petition are presumed true." *In re Welfare of J.H.*, 844 N.W.2d 28, 38 (Minn. 2014). "To determine whether a child is culpable, we examine the alleged offenses." *Id*. The petition alleged that appellant was in possession of a firearm. A search of appellant's phone revealed numerous photographs of appellant with a handgun. The juvenile court found appellant was "solely responsible" for being in possession of a firearm and was therefore culpable. The juvenile court's conclusion that the culpability factor weighs in favor of certification is not clearly erroneous.

10

**Prior record of delinquency**

The third factor considers the juvenile's prior record of delinquency. Minn. Stat. § 260B.125, subd. 4(3). Like the seriousness-of-the-crime factor, this factor must be weighed more heavily than the other factors. Minn. Stat. § 260B.125, subd. 4. A "prior record of delinquency" includes "records of petitions to juvenile court and the adjudication of alleged violations of the law by minors." *In re Welfare of N.J.S.*, 753 N.W.2d 704, 710 (Minn. 2008). In analyzing this factor, a court looks to a prior history demonstrating "deeply ingrained, escalating criminal behavior that presents a threat to public safety." *H.S.H.*, 609 N.W.2d at 263. Courts have found this factor to favor certification when the juvenile has a "significant record" of prior delinquency. *In re Welfare of U.S.*, 612 N.W.2d 192, 196 (Minn. App. 2000). Here, the juvenile court listed appellant's history of delinquency proceedings beginning in 2009, including adjudications on two counts of first-degree aggravated robbery in 2011 and felony-level adjudications from 2014. The juvenile court found appellant has an "extensive delinquency history" dating back to 2009, including petty, misdemeanor, and felony-level offenses. The juvenile court's conclusion that appellant's "extensive" record of prior delinquency weighs in favor of certification is not erroneous.

**Programming history**

Under the fourth factor, the juvenile court considers "the child's programming history, including the child's past willingness to participate meaningfully in available programming." Minn. Stat. § 260B.125, subd. 4(4). "Available programming" includes the juvenile's "attendance at programming events, completion of the events, and

11

demonstrated behavioral changes correlated with the programming." *In re Welfare of P.C.T.*, 823 N.W.2d 676, 683 (Minn. App. 2012), *review denied* (Minn. Feb. 19, 2013). Consideration of this factor is not limited to formal programing and may include "a specialized program provided either through the juvenile justice system, or through a non-juvenile justice system setting, that is designed to address a relevant behavioral or social need of the child." *J.H.*, 844 N.W.2d at 39.

The district court found appellant has an extensive history of programming, including multiple out-of-home placements, both short and long term. According to the certification study, appellant has been on supervised probation in Dakota County since August 2009, a majority of the time on intensive supervision. Appellant has been offered numerous community-based services, including GPS tracking, in-home therapy services, chemical dependency treatment, day treatment, cognitive skills training, all of which were unsuccessful with the exception of one time on GPS tracking. Appellant was also placed into a group home setting where he was terminated because he was deemed unsuccessful due to not following the rules and absconding from the group home. The certification study reveals that appellant has not demonstrated a willingness to "participate meaningfully in available programming." Minn. Stat. § 260B.125, subd. 4(4). "Rejection of prior treatment efforts indicates a juvenile's unwillingness to submit to programming in a meaningful way." *U.S.*, 612 N.W.2d at 196 (citing *In re Welfare of I.Q.S.*, 309 Minn. 78, 91, 244 N.W.2d 30, 40 (1976) (determining public safety was served when juvenile was certified to adult court after rejecting treatment)). Therefore, the juvenile court did not abuse its discretion in ruling that appellant's programming history favors certification.

12

**Adequacy of punishment or programming**

The fifth factor is "the adequacy of the punishment or programming available in the juvenile justice system." Minn. Stat. § 260B.125, subd. 4(5). Appellant could serve 60 months in prison if certified to stand trial as an adult, or 30 months maximum of intensive supervision if placed on extended juvenile jurisdiction (EJJ) status. "Insufficient time for rehabilitation under the juvenile system is an appropriate consideration when deciding whether to refer the juvenile to adult court." *U.S.*, 612 N.W.2d at 197 (citation omitted). The juvenile court found that "30 months of treatment is inadequate and would not serve public safety," given appellant's "extensive and unsuccessful programing history." Appellant argues that the juvenile court should have credited Ms. Albrecht's testimony that there was enough time to ensure compliance with the law under EJJ adjudication. But the juvenile court was in the best position to weigh the credibility of the witness and we defer to the juvenile court's credibility determinations. *J.H.*, 844 N.W.2d at 39. The juvenile court's finding is supported by the record and is not clearly erroneous.

**Dispositional options**

The final factor considers the "dispositional options available for the child." Minn. Stat. § 260B.125, subd. 4(6). In this case, appellant's dispositional options are limited on account of his age. The juvenile court concluded that it "cannot find that the dispositional options available to [appellant] serve public safety." In reaching this conclusion, the juvenile court relied on the fact that appellant "has already had multiple out-of-home placements and has been unsuccessful in community-based programming." The juvenile

13

court concluded that this factor weighed in favor of certification to adult court. The record supports the juvenile court's determination.

The juvenile court analyzed the six public safety factors and concluded that all six factors favored certification. The factual record supports the juvenile court's determination on each factor. Appellant did not rebut the presumption with clear and convincing evidence that retaining the case in the juvenile court system would serve public safety. We therefore conclude that the juvenile court did not abuse its discretion in certifying appellant and we affirm.

**Affirmed.**